JANE DOE *et al.*, Plaintiffs-Appellants and Cross-Appellees, v. JOHN NOE No. 1, as the Ex'r of the Estate of John Noe No. 2, Deceased, *et al.*, Defendants-Appellees and Cross-Appellants (Noe No. 5, Medical Center *et al.*, Defendants-Appellees).

First District (6th Division)   Nos. 1—96—3791, 1—96—3855 cons.

Opinion filed December 26, 1997.

1100

Jeffrey M. Goldberg and Lawrence R. Kream, both of Jeffrey M. Goldberg & Associates, Ltd., of Chicago, for appellants.

Cassiday, Schade & Gloor (Rudolf G. Schade, Jennifer A. Keller, Carolyn Quinn, and Mark D. Wilson, of counsel), and Fedota & Rocca, P.C. (Brian C. Rocca and Mark J. Smith, of counsel), both of Chicago, for appellees.

PRESIDING JUSTICE GREIMAN delivered the opinion of the court:

Plaintiffs Jane Doe (Jane) and her husband John Doe (John) appeal the dismissal of 14 counts in their 18-count second amended complaint, asserting several causes of action premised on the underlying allegation that Jane had been exposed to the human immunodeficiency virus (HIV) during two gynecological surgeries by John Noe

No. 2 (hereinafter Surgeon), *i.e.*, the doctor who performed the surgeries and was HIV positive at the time of the surgeries and subsequently died of acquired immune deficiency syndrome (AIDS).

The crux of plaintiffs' complaint is that Surgeon knew that he was HIV positive when he performed two surgeries on Jane, that he failed to disclose his HIV condition to plaintiffs before the surgeries, and that the surgeries exposed Jane to HIV, which is the precursor of AIDS.

In their second amended complaint, plaintiffs directed various claims against the following defendants: (1) Surgeon (John Noe No. 2), the doctor, now deceased, who performed the two surgeries on Jane, and Executor (John Noe No. 1), the executor of the estate of Surgeon; (2) Corporation (Noe No. 3, S.C.), a professional corporation in which Surgeon allegedly was an employee or agent; (3) Partner (John Noe No. 4, M.D.), a medical doctor who allegedly was Surgeon's partner; and (4) Hospital (Noe No. 5, Medical Center and Noe No. 6, Practice Center), the hospital where the surgeries were performed and the health maintenance organization affiliated with the hospital.

On appeal, plaintiffs contest the dismissal of the counts asserting claims for battery, lack of informed consent, intentional infliction of emotional distress, negligent infliction of emotional distress, conspiracy, and loss of consortium (counts I through XIV).

On cross-appeal, we address the trial court's decision to allow the claims directed against Surgeon and Corporation based on negligent infliction of emotional distress upon Jane (counts XV and XVI) and derivative claims of loss of consortium for John (counts XVII and XVIII). In addition, we answer two certified questions relating to these four counts.

The two certified questions are:

"(a) Whether an HIV positive physician has a duty to disclose his or her HIV status to a patient when seeking the patient's consent to perform an invasive medical procedure which exposes the patient to the risk of HIV transmission; and

(b) If such a duty exists, does a cause of action for the negligent infliction of mental distress exist where there is no allegation of actual HIV transmission during the course of the procedure?"

We answer each certified question in the affirmative and then determine whether plaintiff's second amended complaint states causes of action for: (1) battery and loss of consortium arising out of battery (counts I through IV); (2) lack of informed consent and loss of consortium arising out of a lack of informed consent (counts V through VIII); (3) intentional infliction of emotional distress (count X); (4) negligent infliction of emotional distress and loss of consortium

arising out of negligent infliction of emotional distress (counts XI through XIV); and (5) conspiracy (count IX).

In addition, plaintiffs contend that the trial court erred in dismissing Partner under section 2—1010 of the Illinois Code of Civil Procedure, which allows for the dismissal of a party who avers that he or she was not involved in the alleged occurrence (735 ILCS 5/2—1010 (West 1992)).

Surgeon performed two gynecological surgeries on Jane: a fractional dilation and curettage (D&C) and a polypectomy on May 13, 1992, and another polypectomy on March 26, 1993. In April 1994, plaintiffs filed their original complaint. On October 27, 1994, plaintiffs filed their first amended complaint, which asserted 14 counts based on various theories of liability:

| COUNT | DEFENDANTS | CAUSE OF ACTION |
| --- | --- | --- |
| I | Surgeon | Battery on Jane for performing the surgery in May 1992 |
| II | Surgeon | Loss of consortium for John based on the surgery in May 1992 |
| III | Surgeon | Battery on Jane for performing the surgery in March 1993 |
| IV | Surgeon | Loss of consortium for John based on the surgery in March 1993 |
| V | Surgeon | Lack of informed consent for Jane for the surgery in May 1992 |
| VI | Surgeon | Loss of consortium for John based on lack of informed consent for the surgery in May 1992 |

| | | |
|---|---|---|
| VII | Surgeon | Lack of informed consent for Jane for the surgery in March 1993 |
| VIII | Surgeon | Loss of consortium for John based on lack of informed consent for the surgery in March 1993 |
| IX | Surgeon, Partner and Corporation | Conspiracy |
| X | All Defendants | Intentional infliction of emotional distress upon Jane by their failure to disclose the HIV status of Surgeon and the material risk of transmission of the HIV infection to her |
| XI | Hospital, Partner and Corporation | Negligent infliction of emotional distress upon Jane by their refusal to answer Jane's inquiries as to whether Surgeon's death was HIV related and whether Jane had been exposed to the HIV virus by Surgeon |
| XII | Hospital, Partner and Corporation | Loss of consortium for John based upon count XI |
| XIII | Hospital, Partner and Corporation | Negligent infliction of emotional distress upon Jane based on their duty to Jane to know the HIV status of Surgeon and to advise Jane of his HIV infection in advance of the performance of the invasive surgical procedure |

| XIV | Hospital, Partner and Corporation | Loss of consortium for John based upon count XIII. |

Surgeon, Partner and Corporation filed a motion to dismiss plaintiff's first amended complaint pursuant to section 2—615, among other sections, of the Illinois Code of Civil Procedure (735 ILCS 5/2—615 (West 1992)). These defendants asserted that plaintiffs pleaded insufficient facts, unrecognized duties in law, and unrecognized damages in law. Defendants argued that plaintiffs' allegations of Surgeon's HIV status and of the knowledge of Partner and Corporation of Surgeon's HIV status were unfounded assumptions and conclusions without any factual support. They further asserted that Illinois law does not recognize a duty on the part of Partner and Corporation to know the HIV status of Surgeon and does not recognize a duty on the part of Surgeon, Partner, or Corporation to inform Jane of Surgeon's HIV condition prior to any medical treatment. These defendants further argued that plaintiff has no recognized damages in law because she did not allege actual exposure to the virus.

These defendants also challenged plaintiffs' first amended complaint under sections 2—619 and 2—622 (735 ILCS 5/2—619, 2—622 (West 1992)), arguing that the affidavit from the health professional was insufficient, conclusory and failed to identify with specificity the reasons and basis for the health care professional's determination that there is a reasonable and meritorious cause.

The Hospital filed a separate motion to dismiss on similar grounds under sections 2—615, 2—619, and 2—622 of the Illinois Code of Civil Procedure. Partner also moved for dismissal pursuant to section 2—1010 on the grounds that he never provided medical treatment of any kind to Jane and they never had a doctor-patient relationship.

On October 11, 1995, the trial court dismissed all of the counts, some with prejudice and some with leave to replead. The trial court also issued a memorandum opinion and order, granting defendants' motions to dismiss under section 2—615. The trial court found, in relevant part, that Surgeon had a duty to "disclose any and all risks imposed by his HIV status prior to performing any invasive procedure on" Jane and that Partner had no duty to plaintiffs because he had no involvement in Jane's care under section 2—1010.

On July 22, 1996, plaintiffs filed their second amended complaint, including the same 14 counts from the first amended complaint and adding 4 more counts (counts XV through XVIII) that were directed against Surgeon and Corporation and based on negligent infliction of emotional distress:

| COUNT | DEFENDANTS | CAUSE OF ACTION |
|---|---|---|
| XV | Surgeon and Corporation | Negligent infliction of emotional distress upon Jane as to the May 1992 surgery for failure to disclose Surgeon's HIV status, the material risks of transmission of HIV infection during surgery, available alternative treatment, or alternative physicians to perform surgery |
| XVI | Surgeon and Corporation | Negligent infliction of emotional distress upon Jane as to the March 1993 surgery for failure to disclose the same information as stated in count XV |
| XVII | Surgeon and Corporation | Loss of consortium for John based on count XV |
| XVIII | Surgeon and Corporation | Loss of consortium for John based on count XVI. |

Surgeon, Partner and Corporation filed a motion to dismiss plaintiffs' second amended complaint based on the same arguments they advanced in their motion to dismiss the first amended complaint. The Hospital filed a separate motion to dismiss by incorporating by reference its previously filed motion to dismiss the first amended complaint.

On October 21, 1996, the trial court dismissed with prejudice counts I through XIV. At the hearing on the motions to dismiss plaintiffs' second amended complaint, the trial court reiterated and adopted its reasoning on counts I through XIV as expressed in its memorandum opinion and order dismissing the same counts in plaintiffs' first amended complaint. Regarding counts XV through XVIII (negligent infliction of emotional distress), the trial court denied Surgeon and Corporation's motion to dismiss and further propounded two questions of law for review in accordance with Supreme Court Rule 308 (155 Ill. 2d R. 308).

Plaintiffs appealed the dismissal of counts I through XIV (No.

1—96—3791). Under Rule 308, Surgeon and Corporation filed leave to appeal the trial court's denial of their motion to dismiss counts XV through XVIII and to consider the two certified questions posed by the trial court (No. 1—96—3855). This court granted their Rule 308 petition and consolidated the appeals.

The first certified question asks this court to decide "[w]hether an HIV positive physician has a duty to disclose his or her HIV status to a patient when seeking the patient's consent to perform an invasive medical procedure which exposes the patient to the risk of HIV transmission." The trial court found that such a duty to disclose exists as a matter of law and we agree.

■ "A duty is an obligation to conform to a certain standard of conduct for the protection of another against an unreasonable risk of harm." *Mt. Zion State Bank & Trust v. Consolidated Communications, Inc.*, 169 Ill. 2d 110, 116 (1995); *O'Hara v. Holy Cross Hospital*, 137 Ill. 2d 332, 337 (1990). Both the existence and the scope of a duty are questions of law to be determined by the court. *Cullotta v. Cullotta*, 287 Ill. App. 3d 967, 973 (1997), citing *O'Hara*, 137 Ill. 2d at 337.

To resolve whether a duty exists, a court must determine whether there is a relationship between the parties requiring that a legal obligation be imposed upon one for the benefit of the other. *Rhodes v. Illinois Central Gulf R.R.*, 172 Ill. 2d 213, 227 (1996); *Bucheleres v. Chicago Park District*, 171 Ill. 2d 435, 445 (1996); *Kirk v. Michael Reese Hospital & Medical Center*, 117 Ill. 2d 507, 525 (1987).

It is well established that the relationship between a physician and patient imposes certain duties and obligations on the part of the physician, including the duty to disclose information. "[T]he physician-patient relationship does create an affirmative duty to disclose facts." *Goldberg v. Ruskin*, 128 Ill. App. 3d 1029, 1040 (1984), *aff'd in part*, 113 Ill. 2d 482 (1986).

■ A physician's duty to disclose is incorporated and defined in the doctrine of informed consent. "A physician has a duty to inform patients of the foreseeable risks and results of a given surgical procedure, and the reasonable alternatives to such procedure." *Weekly v. Solomon*, 156 Ill. App. 3d 1011, 1016 (1987); *Hansbrough v. Kosyak*, 141 Ill. App. 3d 538, 551 (1986) (same duty); see also *Whittaker v. Honegger*, 284 Ill. App. 3d 739, 742 (1996) ("foreseeability of harm, in connection with a duty, is not a magical concept that ignores common sense").

The highest court in Maryland was presented with virtually the same question now certified to us: "whether a surgeon infected with the AIDS virus has a legal duty to inform patients of that condition

before operating on them." *Faya v. Almaraz*, 329 Md. 435, 438, 620 A.2d 327, 328 (1993). The *Faya* court found that such a legal duty existed. *Faya*, 329 Md. at 448, 620 A.2d at 333.

In *Faya*, the defendant surgeon performed breast surgeries on the two female plaintiffs at a time when he knew he was HIV positive. *Faya*, 329 Md. at 440, 620 A.2d at 329. Each plaintiff filed separate lawsuits alleging various wrongful acts on the part of the surgeon. The gist of their complaints was that the surgeon "acted wrongfully in operating on the two women without first telling them that he was HIV-positive (and, later, ill from AIDS proper) and that Hopkins [the Hospital] was culpable for permitting him to do so." *Faya*, 329 Md. at 441, 620 A.2d at 330. The plaintiffs contended that by undergoing their operations without knowing of the surgeon's illness, they were exposed to a hazard to which they would not have consented, *i.e.*, a risk of AIDS attendant upon invasive surgery. *Faya*, 329 Md. at 441-42, 620 A.2d at 330. The trial court dismissed the plaintiffs' complaint, intermediate appellate review was bypassed, and the case proceeded to the Court of Appeals, the highest court in Maryland. *Faya*, 329 Md. at 443, 620 A.2d at 330-31.

The *Faya* court explained in detail the nature of the virus, its transmission from one person to another, and its causation of AIDS, an invariably fatal disease. The *Faya* court further acknowledged studies, reports, and literature examining these issues in the medical setting. *Faya*, 329 Md. at 438-39, 440-51, 620 A.2d at 328-29, 331-33. In its discussion of the concept of legal duty, the *Faya* court observed that "legal scholars have long agreed that the *seriousness* of potential harm, as well as its probability, contributes to a duty to prevent it." (Emphasis in original.) *Faya*, 329 Md. at 449, 620 A.2d at 333. Considering all of the medical information and the fundamental principles of a legal duty, the *Faya* court concluded:

> "Under the allegations of the appellants' complaints, taken as true, it was foreseeable that [the surgeon] might transmit the AIDS virus to his patients during invasive surgery. Thus, we are unable to say, as a matter of law, that [the surgeon] owed no duty to the appellants, either to refrain from performing the surgery or to warn them of his condition." *Faya*, 329 Md. at 448, 620 A.2d at 333.

In light of this holding, the *Faya* court reversed the trial court's dismissal of the plaintiffs' complaint as to both the surgeon and the hospital. *Faya*, 329 Md. at 461, 620 A.2d at 339.

■ We find that the decision in *Faya* is persuasive and comports with our already well-established general principles of duty and our particular doctrine of informed consent. Accordingly, we answer the

first certified question in the affirmative and hold that a physician should disclose his or her HIV-positive status to a patient who is going to submit to an invasive surgery.

Having found that a physician has a duty to disclose in the first certified question, we reach the second certified question that asks: "If such a duty exists, does a cause of action for the negligent infliction of mental distress exist where there is no allegation of actual HIV transmission during the course of the procedure?"

■ To state a cause of action for the negligent infliction of emotional distress, a direct victim (as distinguished from a bystander) needs only allege the same elements as any other cause of action based on negligence. *Corgan v. Muehling*, 143 Ill. 2d 296, 306 (1991) (held that a patient plaintiff can allege a cause of action for negligent infliction of emotional distress against her psychotherapist for his having sexual relations with her). A negligence complaint, "to be legally sufficient, must set out facts that establish the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach." *Corgan*, 143 Ill. 2d at 306. To recover for negligent infliction of emotional distress, an allegation of physical injury, illness, manifestation, or symptoms as a result of the emotional distress is not required. *Corgan*, 143 Ill. 2d at 308-12; *Doe v. Roe*, 289 Ill. App. 3d 116 (1997); *Campbell v. A.C. Equipment Services Corp.*, 242 Ill. App. 3d 707, 714 (1993). For purposes of the second certified question, the elements of duty and breach of duty are assumed.

In *Faya*, the case that found a duty to disclose, the Maryland court also addressed a question similar to the second certified question now before us: "whether these are legally compensable injuries where the appellants have not alleged in their complaints an actual transmission of the HIV virus into their bodies during the surgical procedures." *Faya*, 329 Md. at 451, 620 A.2d at 334. Although their complaints did not specifically allege a claim of negligent infliction of emotional distress, the plaintiffs alleged several other causes of action, including negligent failure to obtain the patients' informed consent. *Faya*, 329 Md. at 441, 620 A.2d at 330. The plaintiffs pleaded that as a result of the surgeon's breach of duty to disclose, they were put in fear of having contracted HIV and, due to the derivative consequences of that fear, they suffered emotional and mental distress, headaches, sleeplessness, and the pain and expense associated with repeated blood tests. *Faya*, 329 Md. at 451, 620 A.2d at 334.

The *Faya* court concluded that "even though the averments of the complaints did not identify any actual channel of transmission of the AIDS virus," the plaintiffs could still recover damages. *Faya*, 329

Md. at 455, 620 A.2d at 336-37. The court, however, limited the time period for which recovery was possible to the "reasonable window of anxiety," *i.e.*, the time between when the plaintiffs learned of the surgeon's illness and when the plaintiffs received their HIV-negative results. *Faya*, 329 Md. at 455-56, 620 A.2d at 337; accord *Williamson v. Waldman*, 150 N.J. 232, 696 A.2d 14 (1997); *Tischler v. Dimenna*, 160 Misc. 2d 525, 609 N.Y.S.2d 1002 (1994).

Four Illinois cases have addressed the issue of whether a plaintiff can state a cause of action based on the *possible* transmission of HIV in a medical setting. First, in *Doe v. Surgicare of Joliet, Inc.*, 268 Ill. App. 3d 793 (1994), a contaminated needle was used to administer anesthetic during surgery and the court affirmed the section 2—615 dismissal of the plaintiffs' counts alleging negligent infliction of emotional distress, finding no legally cognizable claim as a matter of law. Two months after undergoing surgery, the plaintiff was informed that during her surgery, a medical technician stuck himself or herself with a needle and used the same needle to administer anesthetic to plaintiff. The medical technician refused to submit to an AIDS test and there was no allegation that the technician was HIV positive or had AIDS. Due to her exposure to the contaminated needle, plaintiff had to undergo AIDS testing. The court found that plaintiff "suffered a physical impact upon being stuck with an unsterile needle by defendant's medical technician." *Surgicare*, 268 Ill. App. 3d at 796. The court, however, held that absent actual exposure to the virus, plaintiffs' claim was too speculative to recognize:

"If a suit for damages is based solely upon plaintiff's fear of acquiring AIDS, but there is no allegation of an actual exposure to the virus, a legally compensable claim cannot be recognized. \*\*\* Recovery in this situation should be based on the likelihood of contracting AIDS, not the fear that it could have happened, but did not." *Surgicare*, 268 Ill. App. 3d at 798-99.

Second, in *Doe v. Northwestern University*, 289 Ill. App. 3d 39 (1997), *pet. for leave to appeal allowed*, 175 Ill. 2d 525 (1997), the plaintiffs' complaint was dismissed, finding no legally cognizable damages. After receiving dental treatment, the plaintiffs were informed that an unnamed dental student who had provided treatment was infected with HIV. Plaintiffs filed complaints, alleging multiple causes of action, but they did not allege that any of them ever tested positive for HIV. The majority in *Northwestern* adopted this standard: "plaintiffs who fear that they have contracted AIDS because of a defendant's negligence should recover damages for the time in which they reasonably feared a substantial, medically verifiable possibility of contracting AIDS." *Northwestern*, 289 Ill. App. 3d

at 48-49. Under this standard, the plaintiffs are required "to present evidence that they knew facts that showed a substantial, medically verifiable possibility of contracting the feared disease." *Northwestern*, 289 Ill. App. 3d at 50. The court concluded that the plaintiffs did not suffer legally cognizable damages because they never faced a medically verified, substantial risk of contracting HIV, noting that the plaintiffs did not allege that any dental student bled during their treatment and that the likelihood of infection was extremely low. *Northwestern*, 289 Ill. App. 3d at 50-51.

Third, in *Majca v. Beekil*, 289 Ill. App. 3d 760 (1997), *pet. for leave to appeal allowed*, 175 Ill. 2d 529 (1997) (consolidated with *Northwestern*), the court affirmed summary judgment for the defendants where the plaintiff had cut her hand on a used scalpel while disposing of the trash in a medical office. The court held that any reasonable fear that plaintiff had about acquiring AIDS was not compensable because she had already tested negative for HIV before she learned that the subject physician had AIDS.

Fourth, in *Natale v. Gottlieb Memorial Hospital*, 292 Ill. App. 3d 512 (1997), the plaintiff had been invaded by a contaminated scope during a colonoscopy and filed a complaint against the surgeon and the hospital. Plaintiff conceded that his only claims were for emotional distress damages. The court allowed plaintiff's complaint to withstand a section 2—615 dismissal because the language in the complaint alleged actual exposure to HIV.

■ Under *Surgicare*, an allegation of actual exposure to the virus is required. Under *Northwestern* and *Majca*, the plaintiff must face a particularly substantial risk of HIV infection to state a cause of action and the fear, even though reasonable, of the possibility of contracting AIDS is not sufficient to be compensable. Notwithstanding the high standards proposed in these Illinois cases, we believe that the *Faya* opinion is more persuasive in allowing plaintiffs to state a cause of action absent an allegation of any actual channel of transmission of the AIDS virus and in restricting the recovery of damages to the time between learning of the surgeon's illness and receiving their HIV-negative results, *i.e.*, the reasonable window of anxiety. Accordingly, we answer the second certified question in the affirmative and find that a cause of action for the negligent infliction of mental distress exists even where there is no allegation of actual HIV transmission during the course of the procedure.

Furthermore, we find *Surgicare* and *Majca* factually distinguishable from the present case. In *Surgicare*, the plaintiffs did not allege that the technician who used the contaminated needle was HIV positive or had AIDS and could not make such an allegation because the

technician refused to submit to an AIDS test. In *Majca*, the plaintiff received negative HIV test results *before* she first learned that the doctor had died of AIDS.

We recognize that our decision is at odds with the standards propounded in *Northwestern* and *Majca* by the majority and the special concurrence. We believe, however, that either standard would discourage notification to a person who may have been exposed to HIV because there would be no reason for such disclosure if no liability obtained in the future. On the other hand, the rationale in *Faya* for allowing liability within the reasonable window of anxiety provides a reason to disclose the possibility of HIV transmission to avoid liability.

In the present case, the trial court dismissed 14 counts of plaintiffs' second amended complaint under section 2—615. On appeal, this court applies a *de novo* standard of review where the trial court dismisses a complaint under section 2—615. *Brown Leasing, Inc. v. Stone*, 284 Ill. App. 3d 1035, 1044 (1996).

■ The question presented by a section 2—615 motion to dismiss for failure to state a cause of action is whether sufficient facts are contained in the pleadings which, if established, would entitle the plaintiff to relief. *Wright v. City of Danville*, 174 Ill. 2d 391, 398 (1996). Thus, the only question on appeal is whether the dismissed counts stated a cause of action upon which the plaintiffs can recover. *Brown Leasing*, 284 Ill. App. 3d at 1044; *Majumdar v. Lurie*, 274 Ill. App. 3d 267, 268 (1995).

BATTERY (Counts I through IV)

First, plaintiffs contend that Surgeon's performance of the surgeries constituted a battery because his failure to reveal that he was HIV positive vitiated the presurgery consent given by plaintiff and, in turn, his performance of the surgeries amounted to harmful and offensive contact. We disagree.

■ Under Illinois law, a claim for battery requires a lack of consent for a touching. See *Bernesak v. Catholic Bishop of Chicago*, 87 Ill. App. 3d 681, 688 (1980). In contrast, a claim alleging a failure to disclose potential risks of an agreed treatment is a medical negligence cause of action based on lack of informed consent. *Mink v. University of Chicago*, 460 F. Supp. 713, 717 (N.D. Ill. 1978) (discusses the distinction); *Northwestern*, 289 Ill. App. 3d at 44. In *Northwestern*, this court held that the plaintiffs could not recover for battery where they consented to the dental procedures that were performed but did not know about the risks associated with the procedures because the dentist was HIV positive. *Northwestern University*, 289 Ill. App. 3d at 44.

Plaintiffs cannot state a cause of action for battery. The law distinguishes between a total lack of consent for the contested act (battery) and the lack of informed consent (negligence). There is no dispute that Jane consented to the surgeries and that Surgeon performed the same procedures to which Jane consented. Like the plaintiffs in *Northwestern,* the only contested element of the surgery is the unknown risk involved because the physician was HIV positive. Accordingly, we affirm the dismissal of the counts for battery and for the derivative loss of consortium alleged by John (counts I through IV).

## INFORMED CONSENT (Counts V through VII)
■ Next, plaintiffs alleged causes of action premised on the doctrine of informed consent. "To succeed in a malpractice action based on the doctrine of informed consent, the plaintiff must plead and ultimately prove four essential elements: (1) the physician had a duty to disclose material risks; (2) he failed to disclose or inadequately disclosed those risks; (3) as a direct and proximate result of the failure to disclose, the patient consented to treatment she otherwise would not have consented to; and (4) plaintiff was injured by the proposed treatment." *Coryell v. Smith,* 274 Ill. App. 3d 543, 546 (1995). "An unrevealed risk that should have been made known must materialize, for otherwise the omission, however unpardonable, is legally without consequence." *Canterbury v. Spence,* 464 F.2d 772, 790 (D.D.C. 1972).

As we previously held in our answer to the first certified question, Surgeon had a duty to disclose his HIV-positive status to Jane before the operations. However, plaintiffs' second amended complaint fails to plead the requisite injury from this unrevealed risk, *i.e.,* the transmission of the HIV infection to Jane during the surgeries. Thus, we affirm the dismissal of the claims for informed consent and the derivative loss of consortium (counts V through VII).

## CONSPIRACY (Count IX)
■ The next count in the complaint (count IX) is directed against Surgeon, Partner and Corporation and appears, in part, to allege an agreement to commit a battery upon Jane by its allegations of "the physical touching" by Surgeon that "was harmful, offensive, and unauthorized." To the extent the count is based on a conspiracy to commit a battery, it was properly dismissed as the battery count was properly dismissed.

This count also alleges that they (Surgeon, Partner and Corporation) "knowingly conspired and agreed among themselves to not

reveal the HIV status of [Surgeon] so as to gain consent to care and treatment that the plaintiff would otherwise decline." A civil conspiracy "consists of a combination of two or more persons for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means." *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 62 (1994). The gist of plaintiffs' conspiracy count appears to be that the "lawful act" was the surgeries, but the "unlawful means" was the failure to disclose Surgeon's HIV-positive status. The duty to disclose risks to a patient, however, rests exclusively with the doctor in a physician-patient relationship. No independent duty is imposed upon others. Accordingly, no conspiracy can be stated and we affirm the dismissal of this conspiracy count (count IX).

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
(Count X)

█ The next count (count X) is directed against all defendants by Jane for intentional infliction of emotional distress. Three elements are required to establish the tort of intentional infliction of emotional distress: "(1) the defendant's conduct was truly extreme and outrageous; (2) the defendant either intended that his conduct inflict severe emotional distress, or knew that there was at least a high probability that his conduct would cause severe emotional distress; and (3) the defendant's conduct did in fact cause severe emotional distress." *Sutherland v. Illinois Bell*, 254 Ill. App. 3d 983, 994 (1993). " 'The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it.' " *Campbell*, 242 Ill. App. 3d at 713, quoting *McGrath v. Fahey*, 126 Ill. 2d 78, 86 (1988), quoting Restatement (Second) of Torts § 46, Comment *j*, at 77-78 (1965).

In their second amended complaint, plaintiffs premise this cause of action on the specific allegations that each defendant, respectively (the Hospital, Corporation, Partner, and Surgeon), "owed a duty to the plaintiff JANE DOE, to *know* the HIV status of [Surgeon], and to advise plaintiff of his HIV infection in advance of the performance of the invasive surgical procedure." (Emphasis added.) No such duty "to know" exists. Thus, we affirm the dismissal of count X.

NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
(Counts XI through XIV)

█ The next four counts (counts XI through XIV) allege negligent infliction of emotional distress counts against Hospital, Partner and Corporation based on their alleged refusal to answer

Jane's question as to the cause of Surgeon's death, their duty to know the HIV status of Surgeon, and their duty to advise Jane of Surgeon's HIV infection before surgery. The trial court dismissed these counts based on the AIDS Confidentiality Act, which precludes disclosure of the HIV status of a person. 410 ILCS 305/9 (West 1992).

As we found in the previous count alleging intentional infliction of emotional distress (count X), there is no independent duty on the part of the Hospital, Partner or Corporation to know the HIV status of Surgeon. Thus, we affirm the dismissal of counts XI through XIV.

NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
(Counts XV through XVIII)

█ The remaining four counts (counts XV through XVIII) are directed against Surgeon and Corporation alleging negligent infliction of emotional distress premised on informed consent and the failure to disclose Surgeon's HIV-positive status. These counts were not dismissed by the trial court and were the subject of the two certified questions. We affirm the trial court's decision to deny the dismissal of these counts for the reasons stated in our discussion of the two certified questions. We also observe that the derivative claims for loss of consortium for John are particularly appropriate here given the very real restriction on a marital relationship when one party may have HIV.

In conclusion, we answer both certified questions in the affirmative, finding that a physician has a duty to disclose his or her HIV-positive status to a patient when seeking the patient's consent to perform an invasive medical procedure which exposes the patient to the risk of HIV transmission and that a cause of action for the negligent infliction of mental distress exists where there is no allegation of actual HIV transmission during the course of the procedure. We affirm the dismissal of counts I through XIV and the denial of dismissal of counts XV through XVIII. In addition, we need not address the trial court's dismissal of Partner under section 2—1010 because the counts that remain are not directed against Partner.

Certified questions answered and judgment affirmed.

THEIS and QUINN, JJ., concur.