# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### September 19, 2013 Session

## IKE J. WHITE, III v. DAVID A. BEEKS, M.D.

**Appeal from the Circuit Court for Bradley County**
**No. V-07-554      J. Michael Sharp, Judge**

_____

**No. E2012-02443-COA-R3-CV-FILED-DECEMBER 9, 2013**

_____

This appeal involves the question of whether the trial court properly limited a medical expert's testimony at trial regarding the standard of care in an informed consent health care liability action. In the case at bar, the defendant filed a motion in limine seeking to limit the testimony of the plaintiff's expert at trial regarding risks that should have been disclosed to the plaintiff to only those risks that actually resulted in injury. The trial court granted the motion. A jury trial was held, and the jury found in favor of the defendant. Plaintiff appeals, asserting that the trial court committed reversible error when it restricted the ability of the plaintiff's medical expert to testify about other known risks. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the Court. CHARLES D. SUSANO, JR., P.J., filed a separate concurring opinion. D. MICHAEL SWINEY, J., filed a separate dissenting opinion.

H. Franklin Chancey, Cleveland, Tennessee, for the appellant, Ike J. White, III.

Richard A. Smith and Stacy Lynn Archer, Chattanooga, Tennessee, for the appellee, David A. Beeks, M.D.

## OPINION

### I. Factual and Procedural Background

Plaintiff, Ike J. White, III, filed a health care liability action against defendant, David Beeks, M.D., alleging that Dr. Beeks negligently treated a herniated disc in Mr. White's

back. Dr. Beeks performed spinal fusion surgery, utilizing a product called "InFuse." InFuse is described as a bone morphogenic protein, which is designed to stimulate bone growth and promote fusion. Following the surgical procedure, Mr. White's pain and physical impairment worsened. Testing revealed that he had developed excess bone growth in his spine, which irritated a nerve root.

Mr. White's expert, Dr. Melvin Law, testified during his deposition that the use of InFuse could result in (1) cystic lesions forming in the spinal canal; (2) postoperative fluid collection, requiring further surgery to "draw the fluid off"; (3) ectopic bone growth; or (4) postoperative radiculitis, which Dr. Law explained was "inflammation around the nerve roots." Prior to trial, Dr. Beeks filed a motion in limine, asking the court to prohibit Dr. Law from discussing potential risks of InFuse other than those related to the injury Mr. White specifically suffered (excess bone growth and nerve irritation). The trial court granted this motion, and accordingly Dr. Law was not examined at trial about the other complications and risks associated with this product.

A jury trial was conducted over the course of four days. The jury subsequently returned a verdict for Dr. Beeks. Mr. White filed a motion for new trial, which the trial court denied. Mr. White timely appeals.

## II. Issue Presented

In this appeal, Mr. White presents the issue of whether the trial court committed reversible error by limiting a medical expert's testimony at trial regarding the informed consent information, required by the standard of care, to disclosure of only those risks that actually resulted in injury.

## III. Standard of Review

As this Court has previously stated:

The admission or exclusion of evidence is within the trial court's discretion. The discretionary nature of the decision does not shield it completely from appellate review but does result in subjecting it to less rigorous appellate scrutiny. Because, by their very nature, discretionary decisions involve a choice among acceptable alternatives, reviewing courts will not second-guess a trial court's exercise of its discretion simply because the trial court chose an alternative that the appellate courts would not have chosen.

Discretionary decisions require conscientious judgment. They must take the

-2-

applicable law into account and must also be consistent with the facts before the court. Appellate courts will set aside a discretionary decision only when the trial court has misconstrued or misapplied the controlling legal principles or has acted inconsistently with the substantial weight of the evidence. Thus, a trial court's discretionary decision should be reviewed to determine: (1) whether the factual basis for the decision is supported by the evidence, (2) whether the trial court identified and applied the applicable legal principles, and (3) whether the trial court's decision is within the range of acceptable alternatives. Appellate courts should permit a discretionary decision to stand if reasonable judicial minds can differ concerning its soundness.

*White v. Vanderbilt Univ.*, 21 S.W.3d 215, 222-23 (Tenn. Ct. App. 1999) (internal citations omitted).

## IV. Testimony Regarding the Standard of Care

Dr. Beeks's motion in limine asked the trial court to limit Dr. Law's testimony at trial regarding the information Dr. Beeks was required to disclose concerning InFuse in order to comply with the requisite standard of care for informed consent. Dr. Beeks's motion asserts:

It would be shown that in Dr. Law's testimony, he gave an opinion as to a number of risks associated with the use of the product InFUSE to help facilitate a fusion of the vertebrae in the surgery performed on Mr. White. In this case, the plaintiff is claiming that the use of the product InFUSE caused unwanted bone growth (ectopic) into the spinal canal, which he claims impinged upon Mr. White's S1 nerve root on the right side. Dr. Law mentioned other risks which he believed the standard of care required to be disclosed to Mr. White to obtain his informed consent, but none of these risks occurred. To make out a claim for lack of informed consent, it must be shown that the defendant physician failed to disclose information which a reasonable physician in the same community and under the same circumstances would have disclosed and the risk not disclosed occurred and caused injury to the patient. Since none of the risks cited by Dr. Law occurred, except for ectopic bone growth, the patient suffered no injury as a result of those undisclosed risks. The risks are, therefore, not relevant under Tenn. R. Evid. 401 and would be potentially prejudicial to Dr. Beeks under Tenn. R. Evid. 403.

The trial court granted the motion, stating:

Defendant's Motion in Limine #14 requesting an Order limiting the testimony

of Plaintiff's expert, Dr. Law, with respect to the information required by the standard of care to be given by Dr. Beeks to Mr. White to obtain his informed consent for the surgical procedure on May 2, 2006, as to additional risks he believed the standard of care required to be disclosed to Mr. White, but for which there is no allegation that said risks occurred and no allegation that the Plaintiff has suffered any injury from the unspoken risks was taken under advisement and the Court GRANTED the motion as noticed by letter on June 8, 2012.

Mr. White contends that the trial court's ruling in this regard was reversible error, as Dr. Beeks was required to disclose "all significant perils" associated with the use of InFuse to Mr. White in order to obtain effective informed consent. *See Ashe v. Radiation Oncology Assocs.*, 9 S.W.3d 119, 124 (Tenn. 1999). Dr. Beeks asserts that the trial court's limitation of testimony was correct, as risks which did not materialize are legally without consequence. *See Bryant v. Bauguss*, No. 03A01-9603-CV-00105, 1996 WL 465539 at *6 (Tenn. Ct. App. Aug. 16, 1996). We agree with Dr. Beeks.

The statute regarding informed consent provides:

In a health care liability action, the plaintiff shall prove by evidence as required by § 29-26-115(b) that the defendant did not supply appropriate information to the patient in obtaining informed consent (to the procedure out of which plaintiff's claim allegedly arose) in accordance with the recognized standard of acceptable professional practice in the profession and in the specialty, if any, that the defendant practices in the community in which the defendant practices and in similar communities.

Tenn. Code Ann. § 29-26-118 (Supp. 2013). Tennessee Code Annotated § 29-26-115(b) states in pertinent part:

No person in a health care profession requiring licensure under the laws of this state shall be competent to testify in any court of law to establish the facts required to be established by subsection (a), unless the person was licensed to practice in the state or a contiguous bordering state a profession or specialty which would make the person's expert testimony relevant to the issues in the case and had practiced this profession or specialty in one (1) of these states during the year preceding the date that the alleged injury or wrongful act occurred.

Tenn. Code Ann. § 29-26-115(b) (Supp. 2013).

In a seminal opinion rendered by our Supreme Court regarding informed consent, *Shadrick v. Coker*, the Court elucidated:

A cause of action based on the lack of informed consent stems from the premise that a competent patient should be allowed to formulate an intelligent, informed decision about surgical or other treatment procedures the patient undertakes. *Housh v. Morris*, 818 S.W.2d 39, 41 (Tenn. App. 1991). The basic policy consideration which supports the recognition of the cause of action for lack of informed consent has been explained as follows:

> The root premise is the concept fundamental in American jurisprudence that 'every human being of adult years and sound mind has a right to determine what shall be done with his own body. . . .' True consent to what happens to one's self is the informed exercise of a choice, and that entails an opportunity to evaluate knowledgeably the options available and the risks dependant upon each. The average patient has little or no understanding of the medical arts, and ordinarily has only his physician to whom he can look for enlightenment with which to reach an intelligent decision. From these almost axiomatic considerations springs the need, and in turn the requirement, of a reasonable divulgence by [the] physician to [the] patient to make such a decision possible.

*Canterbury v. Spence*, 464 F.2d 772, 780 (D.C. Cir.1972).

Accordingly, the law recognizes that a health care provider, such as a physician or surgeon, who proposes a treatment or surgical procedure has a duty to provide the patient with enough information about the nature of the treatment or procedure involved to enable the patient to make an intelligent decision and thereby give an informed consent to the treatment or procedure. *See Cardwell v. Bechtol*, 724 S.W.2d 739, 750 (Tenn. 1987). Depending on the usual and customary advice given to patients to procure consent in similar situations, the health care provider must typically inform the patient of the diagnosis or nature of the patient's ailment, the nature of and the reasons for the proposed treatment or procedure, the risks or dangers involved, and the prospects for success. *See* 70 C.J.S. Physicians and Surgeons § 93 (1987). The patient must also be informed of alternative methods of treatment, the risks and benefits of such treatment and, if applicable, that the proposed treatment or procedure is experimental. *Id.* Whether the information given to

the patient is sufficient "depends on the nature of the treatment, the extent of the risks involved, and the standard of care [applicable to the defendant health care provider]." *Cardwell*, 724 S.W.2d at 749.

963 S.W.2d 726, 731-32 (Tenn. 1998).

The Supreme Court further explained that in informed consent cases:

The burden of proof on the standard of care element is controlled by Tenn. Code Ann. § 29-26-118, which requires that in a lack of informed consent action the plaintiff prove, by expert testimony, "that the defendant did not supply appropriate information to the patient in obtaining his informed consent to the procedure out of which plaintiff's claim allegedly arose in accordance with the recognized standard of acceptable professional practice in the profession and in the speciality, if any, that the defendant practices in the community in which he practices or in similar communities." *See also German v. Nichopoulos*, 577 S.W.2d 197, 204 (Tenn. App. 1978) ("[I]n matters of informed consent the plaintiff has the burden of proving by expert medical evidence, (a) what a reasonable medical practitioner of the same or similar communities under the same or similar circumstances would have disclosed to the patient about the attendant risks incident to a proposed diagnosis or treatment and (b) that the defendant departed from the norm.").

*Shadrick*, 963 S.W.2d at 732 n.6 (emphasis added). *See also Blanchard v. Kellum*, 975 S.W.2d 522, 524 (Tenn. 1998).

The following year, our Supreme Court released its opinion in *Ashe*, determining the proper standard to be employed when assessing causation in informed consent cases, finding this issue to be "one of first impression in Tennessee." 9 S.W.3d at 121. The Supreme Court found that the "majority" approach, the objective standard, emanated from the *Canterbury* decision, wherein the D.C. Circuit Court of Appeals held that "causation in informed consent cases is better resolved on an objective basis 'in terms of what a prudent person in the patient's position would have decided if suitably informed of all perils bearing significance.'" *Ashe*, 9 S.W.3d at 122 (quoting *Canterbury v. Spence*, 464 F.2d 772, 791 (D.C. Cir.1972)). The Court found this approach to be a favored one over the subjective standard, as it "provides a realistic framework for rational resolution of the issue of causation." *Id*. at 123. Therefore, in employing this standard for establishing causation, the Court instructed in pertinent part:

The finder of fact may consider and give weight to the patient's testimony as

to whether the patient would have consented to the procedure upon full disclosure of the risks. When applying the objective standard, the finder of fact may also take into account the characteristics of the plaintiff including the plaintiff's idiosyncrasies, fears, age, medical condition, and religious beliefs. Accordingly, the objective standard affords the ease of applying a uniform standard and yet maintains the flexibility of allowing the finder of fact to make appropriate adjustments to accommodate the individual characteristics and idiosyncrasies of an individual patient. We, therefore, hold that the standard to be applied in informed consent cases is whether a reasonable person in the patient's position would have consented to the procedure or treatment in question if adequately informed of all significant perils.[1]

*Id.* at 123-124 (internal citations omitted).

Dr. Beeks asserts that the Supreme Court's references to causation in *Ashe* relate only to cause in fact and not proximate cause. Regarding the distinction between these elements of negligence, our Supreme Court has explained that:

Causation and proximate cause are distinct elements of negligence, and both must be proven by the plaintiff by a preponderance of the evidence. *Bradshaw*, 854 S.W.2d at 869; *McClenahan v. Cooley*, 806 S.W.2d 767, 774 (Tenn. 1991); *Smith v. Gore*, 728 S.W.2d 738, 749 (Tenn. 1987). "Causation (or cause in fact) is a very different concept from that of proximate cause. Causation refers to the cause and effect relationship between the tortious conduct and the injury. The doctrine of proximate cause encompasses the whole panoply of rules that may deny liability for otherwise actionable causes of harm." King, *Causation, Valuation, and Chance in Personal Injury Torts Involving Preexisting Injuries and Future Consequences*, 90 Yale L.J. 1353, 1355 n. 7 (1981). Thus, proximate cause, or legal cause, concerns a determination of whether legal liability should be imposed where cause in fact has been established. *McKellips v. Saint Francis Hosp.*, 741 P.2d 467 (Okl. 1987). "Cause in fact, on the other hand, deals with the 'but for' consequences of an act. 'The defendant's conduct is a cause of the event if the event would not have occurred but for that conduct.'" *Id*. at 470 (quoting Prosser and Keeton, *The Law of Torts* 266 (5th ed. 1984)).

*Kilpatrick v. Bryant*, 868 S.W.2d 594, 598 (Tenn. 1993).

---

[1] There is no dispute regarding the fact that Mr. White has maintained that he would not have consented to the use of InFuse if he had been adequately informed of its risks.

In *Ashe*, our Supreme Court discussed "causation" in informed consent cases without specifically addressing the distinction between cause in fact and proximate cause. 9 S.W.3d at 123-124. Based upon the language quoted above from *Kilpatrick*, our Supreme Court has utilized the terms "causation" and "cause in fact" interchangeably. 868 S.W.2d at 598. We decline to speculate regarding the Court's intent when discussing "causation" in *Ashe*.

We do, however, take notice of the fact that *Kilpatrick* was a health care liability action based on Tennessee Code Annotated § 29-26-115(b), and as our Supreme Court pointed out, the statute simply "codifies the common law elements of negligence—duty, breach of duty, **causation, proximate cause**, and damages." 868 S.W.2d at 598 (emphasis added). As the Court stated, a claim cannot "succeed in the absence of any one of these elements." *Id.*

Many of the cases involving informed consent litigation, both from this jurisdiction and other jurisdictions, stem from the D.C. Circuit Court of Appeals's seminal *Canterbury v. Spence* decision, 464 F.2d 772 (D.C. Cir. 1972), *cert. denied*, 409 U.S. 1064 (1972). *See Ashe*, 9 S.W.3d at 122; *Shadrick*, 963 S.W.2d at 732. *See, e.g., Fain v. Smith*, 479 So. 2d 1150, 1153 (Ala. 1985)*; Woolley v. Henderson*, 418 A.2d 1123, 1132 (Me. 1980); *Canesi v. Wilson,* 730 A.2d 805 (N.J. 1999); *Cochran v. Wyeth, Inc.*, 3 A.3d 673 (Pa. Super. Ct. 2010), *appeal denied*, 20 A.3d 1209 (Pa. 2011). In *Canterbury*, the Court discussed the requirements of a claim based on lack of informed consent, stating:

> No more than breach of any other legal duty does nonfulfillment of the physician's obligation to disclose alone establish liability to the patient. **An unrevealed risk that should have been made known must materialize, for otherwise the omission, however unpardonable, is legally without consequence.** Occurrence of the risk must be harmful to the patient, for negligence unrelated to injury is nonactionable. **And**, as in malpractice actions generally, there must be a causal relationship between the physician's failure to adequately divulge and damage to the patient.
>
> A causal connection exists when, but only when, disclosure of significant risks incidental to treatment would have resulted in a decision against it.

*Canterbury*, 464 F.2d at 790 (emphasis added). Thus, *Canterbury* suggests two distinct elements of causation: 1) that disclosure of significant risks would have resulted in a decision to forego the treatment (for which the court adopted the above-discussed objective standard, as followed by *Ashe*), and 2) that the undisclosed risk materialized and caused injury.

Other jurisdictions have followed this rule regarding causation in informed consent

-8-

cases, holding that an undisclosed risk is only material if it actually results in injury to the plaintiff. *See Jones v. Howard University, Inc.,* 589 A.2d 419 (D.C. App. 1991); *Canesi,* 730 A.2d at 812-813; *Cochran,* 3 A.3d at 679. In *Cochran,* the Superior Court of Pennsylvania explained:

> [W]e are persuaded by the jurisdictions that have concluded a plaintiff cannot establish proximate causation where the non-disclosed risk never materialized into an injury.
> . . .

> In *Downer v. Veilleux,* 322 A.2d 82, 92 (Me. 1974), the Supreme Court of Maine formulated the proximate cause inquiry in informed consent cases as follows:

>> [A breach of] the physician's obligation to disclose the material risks incidental to a particular treatment . . . does not per se establish liability to the patient. As in the case of any breach of a legal duty, the plaintiff must . . . prove a proximate causal relationship between the physician's failure to adequately inform and injury to the patient.

>> Proof of proximate cause in such cases requires, initially, a showing that the unrevealed risk which should have been made known has materialized. Absent occurrence of the undisclosed risk, the doctor's omission is legally inconsequential.

> *Id.*

The view espoused by the courts in *Canterbury* and *Downer* has been uniformly accepted by the high courts of numerous other jurisdictions. *See, e.g., Funke v. Fieldman,* 212 Kan. 524, 512 P.2d 539, 548 (1973); *Scott v. Bradford,* 606 P.2d 554, 559 (Ok. 1979); *Hales v. Pittman,* 118 Ariz. 305, 576 P.2d 493, 499 (1978); *Harnish v. Children's Hospital Medical Center,* 387 Mass. 152, 439 N.E.2d 240, 244 (1982); *Reinhardt v. Colton,* 337 N.W.2d 88, 95-96 (Minn. 1983); *LaCaze v. Collier,* 434 So.2d 1039, 1048 (La. 1983); *Nickell v. Gonzalez,* 17 Ohio St.3d 136, 477 N.E.2d 1145, 1148 (1985); *Smith v. Cotter,* 107 Nev. 267, 810 P.2d 1204, 1209 (1991); *Howard v. Univ. of Med. & Dentistry of N.J.,* 172 N.J. 537, 800 A.2d 73, 79-80 (2002); *see also Doe v. Noe,* 293 Ill. App.3d 1099, 228 Ill. Dec. 937, 690 N.E.2d 1012, 1021 (1997); *Wachter v. U.S.,* 689 F.Supp. 1420, 1422 (D. Md. 1988) (applying Maryland

law); *Hook v. Rothstein*, 281 S.C. 541, 316 S.E.2d 690, 704 (1984). Indeed, this Court is unable to locate any authority that has refused to adopt the proximate cause principle enunciated in *Canterbury* and *Downer*. In informed consent cases, it appears to be well-settled and without debate that the non-disclosed risk must manifest itself into actual injury in order for a plaintiff to establish proximate causation.

*Cochran*, 3 A.3d at 679-80. This Court likewise has been unable to locate any authority that has refused to adopt the proximate cause principle elucidated in *Canterbury*. We have found, however, additional jurisdictions that have adopted Canterbury's proximate cause rule. *See Culbertson v. Mernitz*, 591 N.E.2d 1040, 1043 (Ind. Ct. App. 1992), *vacated on other grounds*, 602 N.E.2d 98 (Ind. 1992); *Greene v. Thiet*, 846 S.W.2d 26, 31 (Tex. App. 1992).

Significantly, this Court has previously recognized this rule as well. In *Bryant v. Bauguss,* 1996 WL 465539 at *1, the plaintiff alleged that the defendant peridontist utilized an improper surgical instrument when performing oral surgery on the plaintiff, which resulted in permanent facial numbness. The plaintiff also claimed that the defendant failed to fully inform him of the risks attendant to the surgery. *Id.* The defendant filed a motion for summary judgment and attached his own affidavit in support thereof. *Id.*

When discussing the plaintiff's lack of informed consent claim in *Bryant*, this Court pointed out that the defendant had stated in his affidavit that the "rare potential for nerve injury in this procedure does not require description of this complication in obtaining informed consent." *Id.* at *5. The plaintiff failed to provide any countervailing medical proof on this point. *Id.* This Court then stated:

> Bryant points out that Dr. Bauguss' affidavit fails to state that he advised Bryant of any risks associated with the surgery. He seems to argue that this failure in some way renders the defendant's motion as to the informed consent issue inadequate. The answer to this contention is that **failure to inform a patient of a risk that does not ripen into a condition as a result of the surgery is immaterial as to whether informed consent was given. In such a situation, no injury equals no cause of action. The critical question is what, if anything, was required to be said, and what was said, about the condition that did result from the surgery.**

*Id*. at *6 (emphasis added).

As stated above, a health care liability action requires proof of duty, breach of duty, causation, proximate cause, and damages – a claim cannot "succeed in the absence of any

-10-

one of these elements." *Kilpatrick*, 868 S.W.2d at 598. Where the risk about which a patient was not warned does not materialize, proximate cause is lacking. *See, e.g., Bryant,* 1996 WL 465539 at *6; *Canterbury*, 464 F.2d at 790; *Canesi,* 730 A.2d at 812-813; *Cochran*, 3 A.3d at 679. Contrary to Mr. White's assertions, our Supreme Court did not address this question in *Ashe*, because in that case the undisclosed risk actually materialized. This Court has been unable to locate any decision from our Supreme Court specifically addressing the element of proximate cause relative to an informed consent action.

Our Supreme Court did, however, announce the following policy considerations regarding informed consent in *Shadrick*:

> This is not to suggest . . . that a health care provider is required to enumerate in detail every aspect of the proposed treatment or procedure or discuss every possible thing that might go wrong in an effort to obtain the patient's informed consent. "In the first place, to do so is humanly impossible. In the second place, if all the gory details of a proposed surgery were graphically explained to every patient and all possible medical maladies that might result were enumerated we doubt that a lay person would have the stomach to listen to it all; and if the patient did, would probably be in such a fearful state that no rational decision could be made." *Longmire v. Hoey*, 512 S.W.2d 307, 310 (Tenn. App. 1974).

963 S.W.2d at 733.

Based on the precedent discussed above, we determine that Tennessee law recognizes the rule as stated in *Canterbury* and its progeny that a plaintiff in an informed consent case must show both cause in fact and proximate cause to succeed. Therefore, we conclude that the trial court did not abuse its discretion in limiting Dr. Law's testimony in this case to only those risks that did actually materialize, as any risks which did not ripen into an injury are legally without consequence.

## V. Conclusion

The trial court's judgment is affirmed. Costs on appeal are taxed to appellant, Ike J. White, III. This case is remanded to the trial court, pursuant to applicable law, for enforcement of the trial court's judgment and collection of costs assessed below.

_____
THOMAS R. FRIERSON, II, JUDGE

-11-