579 A.2d 925

**Carolyn Hypes TAURINO and Anthony Taurino, H/W, Appellants,**

v.

**Stephen J. ELLEN, M.D., Women's Suburban Clinic and Parke–Davis Division of Warner–Lambert Co.**

Superior Court of Pennsylvania.

Argued March 13, 1990.

Filed Aug. 23, 1990.

John F.X. Fenerty, Philadelphia, for appellants.

Murray Levin, Philadelphia, for Parke–Davis, appellee.

Before ROWLEY, BECK and MONTGOMERY, JJ.

BECK, Judge:

This is an appeal from a grant of summary judgment for defendant appellee, Parke–Davis Division of Warner-Lambert Company, in a product liability action arising out of the use by plaintiff appellant, Carolyn Taurino, of birth control pills manufactured by Parke–Davis. Although appellants[1] raise several interesting questions concerning the proper application of the learned intermediary doctrine, which formed the basis for the trial court's grant of summary judgment, we find no ground for reversal of the trial court's order and affirm.

On September 28, 1981, Ms. Taurino came to Women's Suburban Clinic for counselling, including birth control counselling. At that time, Ms. Taurino was allegedly given a supply of Loestrin, a birth control drug manufactured by Parke–Davis. She allegedly was supplied the drug by an employee of the clinic who was not a doctor. Two days later, Ms. Taurino returned to the clinic for a medical procedure. Following that procedure, a doctor at the clinic signed a progress note regarding Ms. Taurino on which he noted "Loestrin 1.5/30." Several days later, on October 5, 1981, Ms. Taurino first began taking Loestrin. She continued to do so until sometime in November 1981. Four months after taking the drug, Ms. Taurino developed a thrombosis in her leg. After numerous surgical proce-

1. Ms. Taurino is joined by her husband, Anthony Taurino, in this appeal.

dures, Ms. Taurino eventually suffered the amputation of her leg above the knee.

Appellants, Ms. Taurino and her husband, filed this personal injury suit against the clinic, the doctor at the clinic and Parke–Davis in May 1984. They alleged strict liability, negligence and breach of warranty, all premised on the allegation that Ms. Taurino's use of Loestrin caused her injuries.[2] As to Parke–Davis, appellants' theory was failure to warn. However, during discovery, appellants conceded that they did not contest the adequacy of Parke–Davis' warnings to *physicians* prescribing Loestrin. Appellants relied solely on their theory that Parke–Davis had a duty to warn *patients* using Loestrin directly. Parke–Davis immediately moved for summary judgment, which the trial court granted on July 5, 1989.

The basis for the trial court's decision was the learned intermediary doctrine. First adopted by the Supreme Court in *Incollingo v. Ewing*, 444 Pa. 263, 282 A.2d 206 (1971), this doctrine provides that a manufacturer of a prescription drug must direct warnings to the prescribing physician, but not to the patient. In *Makripodis v. Merrell–Dow Pharmaceuticals, Inc.*, 361 Pa.Super. 589, 596, 523 A.2d 374, 378 (1987), a panel of this court explained the learned intermediary doctrine and the policies that underlie it as follows:

> It is clear that the manufacturer of a prescription drug known to be dangerous for its intended use, has "a duty to exercise reasonable care to inform those for whose use the article [was] supplied of the facts which make [the product] likely to be dangerous." *Incollingo v. Ewing, supra*, 444 Pa. at 285 n. 8, 282 A.2d at 220 n. 8. However, the warnings which are required to be given by the manufacturer must be directed to the physician, not the patient-consumer. This is so because it is the duty of the prescribing physician to be fully aware of (1) the characteristics of the drug he is prescribing, (2) the amount of

2. Appellants make no argument on appeal concerning their breach of warranty theory and, therefore, we will not consider it.

the drug which can be safely administered, and (3) the different medications the patient is taking. It is also the duty of the prescribing physician to advise the patient of any dangers or side effects associated with the use of the drug as well as how and when to take the drug. The warnings which must accompany such drugs are directed to the physician rather than to the patient-consumer as "[i]t is for the prescribing physician to use his independent medical judgment, taking into account the data supplied to him from the manufacturer, other medical literature, and any other sources available to him, and weighing that knowledge against the personal medical history of his patient, whether to prescribe a given drug." *Leibowitz v. Ortho Pharmaceutical Corporation, supra,* 224 Pa.Super. [418] at 431, 307 A.2d [449] at 457 [ (1973) ]. Thus, in an action against a drug manufacturer based upon inadequate warnings, the issue to be determined is whether the warning, if any, that was given to the prescribing physicians was proper and adequate. *See: Baldino v. Castagna, supra,* 505 Pa. [239] at 244–45, 478 A.2d [807] at 810 [ (1984) ].

The trial court reasoned that since Loestrin is a prescription drug, required by federal law to be dispensed only by prescription of a physician, and since appellants had conceded the adequacy of the warnings Parke–Davis had supplied to physicians prescribing Loestrin, under the undisputed facts of record Parke–Davis had no liability and was entitled to judgment as a matter of law. Pa.R.C.P. 1035(d).

In reviewing the trial court's grant of summary judgment, we must examine the record in the light most favorable to the nonmoving party, but must reverse only where we find an error of law or manifest abuse of discretion. *Mutual Benefit Ins. Co. v. Goschenhoppen Mut. Ins. Co.,* 392 Pa.Super. 363, 572 A.2d 1275 (1990).

On appeal, appellants claim that they are not challenging or seeking to overturn the learned intermediary doctrine. Rather, appellants assert that they take issue only with the application of the doctrine to this case. Specifically, appel-

lants question whether the doctrine should operate to foreclose liability of a prescription drug manufacturer in a case where the drug is given to a patient who herself chooses to take the drug without a learned intermediary, i.e. where there is no prescribing doctor. They also allege that where a prescription drug manufacturer supplies its drugs in bulk to clinics and there is a genuine issue of fact as to whether the manufacturer knows that those drugs will be administered without the intervention of a prescribing physician, then summary judgment is inappropriate and the manufacturer is negligent if it did not direct adequate warnings to the patient herself. Lastly, appellants argue that here Parke–Davis did directly warn patients using Loestrin and that such warning was inadequate.

■ Despite appellants' protestations to the contrary, we view their position as in fact being an attempt to overturn the learned intermediary doctrine insofar as it applies to one class of prescription drugs, i.e., contraceptives. They do not seek to establish that this case alone, because of its peculiar facts, is outside the doctrine, but rather seek to establish that *all* contraceptive drug cases should be outside the doctrine. Throughout appellants' brief there are lengthy discourses concerning societal changes in the frequency of contraceptive use and the manner in which contraceptives are provided. Appellants argue that now, unlike in the early seventies when the learned intermediary doctrine was first adopted in Pennsylvania, contraceptives are widespread and are customarily given to patients as a result of the patients' own choice of birth control method, either without the intervention of a physician or without the same level of physician involvement as is customary with other types of drugs. Based on these allegations, appellants argue that the learned intermediary doctrine's application to contraceptives must be reconsidered and that manufacturers of these drugs must now be forced to warn the patients directly and held liable if they do not do so or do so inadequately.

Our response to these arguments is straightforward. We, as an intermediate appellate court, are not free to disregard existing law as established by the Supreme Court of this Commonwealth based solely on such generalized allegations of societal changes. The Supreme Court has declared that the learned intermediary doctrine defines the liability of a prescription drug manufacturer. *See Incollingo v. Ewing, supra.* The doctrine has since been applied by this court specifically in a case involving birth control pills. *See Leibowitz v. Ortho Pharmaceutical Corporation, supra.* We are bound by these decisions and must apply them in all cases, such as this one, that involve drugs which are by law available by prescription only. We cannot ignore them by imposing on manufacturers of contraceptive drugs an entirely new duty to warn patients directly, despite the clear limits of these prior decisions.

Turning to the specific issues raised, we begin with appellants' argument that the fact that no learned intermediary first gave Ms. Taurino her supply of Loestrin takes this case out of the learned intermediary doctrine. Even assuming that Ms. Taurino was originally given Loestrin without the intervention of a physician as she alleges, we nevertheless point out that a physician did note that Ms. Taurino would take Loestrin *before* she began taking it. Under these facts, it appears that there may well have been some intervention of a learned intermediary in this case. In any event, we need not and do not decide if there is a genuine dispute as to this fact because we find it legally irrelevant to whether summary judgment in favor of Parke–Davis was appropriate. Assuming that the law which requires that Loestrin be administered only pursuant to a prescription by a physician is violated and that someone other than a physician administers the drug, and assuming further, as we must on the record before us, that the manufacturer has no reason to know that this will occur, the manufacturer is not liable for failure to warn where it did direct a warning to the physician and such warning was concededly adequate. In such a case, the manufacturer

fulfills its duty under the learned intermediary doctrine at the time it sells its product with adequate warnings directed to a physician. No new duty is created by the fact that after the sale no physician actually becomes involved in prescribing the drug. Although liability of a variety of kinds might then attach to the person providing the drug without the intervention of a physician, the manufacturer has no liability. As Parke–Davis argues, to hold otherwise would be to confuse the duties of the manufacturer and of those other persons who later become involved in the provision of the drug.

■ In their second issue, appellants allege that Parke–Davis had a practice of supplying Loestrin in bulk to birth control clinics, that such clinics routinely supply Loestrin to patients without the intervention of a physician, and that there is a genuine of fact as to whether Parke–Davis knew or should have known that such clinics were providing Loestrin to patients without a physician first prescribing it. We cannot address Parke–Davis' liability on this ground in the context of this case. This record does not contain any evidence of the facts on which this assertion is predicated. There is no evidence of any practice of Parke–Davis regarding the manner in which it supplies Loestrin, to birth control clinics or otherwise, or of how birth control clinics supply Loestrin to their patients. Moreover, there is no evidence of any actual knowledge of Parke–Davis or of any facts which should have led Parke–Davis to know that Loestrin was being provided to patients on request, without intervention of a physician.

Appellants attempt to justify this lack of evidence by making the following argument:

> In the case at bar, Women's Suburban Clinic dispensed a supply of contraceptives to Mrs. Taurino without benefit of a physician. There was nothing to indicate that this practice was in any way unusual. If, as a matter of fact, Women's Suburban Clinic routinely dispensed supplies of contraceptive medications without physician consult, and not by prescription, it is a logical inference that the

supply of contraceptives reached the Clinic's hands directly from the manufacturer, who must be charged then with knowledge of the drug's distribution. Therefore, even if Parke–Davis did not keep itself informed of the changed relationship between the physician and the user of contraceptive medications, it certainly should have known how its own contraceptive medications were reaching the hands of the public; it certainly should have known the methods of distribution that they themselves used.

Brief for Appellants at p. 21.

The flaw in this analysis is patent—it is no substitute for evidence. Appellants do not even attempt to demonstrate how they have presented sufficient evidence to raise a genuine dispute as to whether the clinic involved in this case or any other birth control clinic does, in fact, routinely distribute contraceptives without physician prescription, which is the ground upon which their entire argument proceeds. Nor do appellants attempt to show us where they have presented evidence as to whether Parke–Davis did, in fact, supply Loestrin in bulk directly to this or any other such clinic, or, finally, as to whether Parke–Davis did or should have known how this or any other such clinic was distributing Loestrin. They do not refer us to evidence of these predicate facts because the record contains none. Therefore, we decline to opine on what Parke–Davis' duties might be if, in fact, there was a genuine dispute as to the foregoing material facts.[3] On this record, Parke–Davis is

---

**3.** We recognize that under *Incollingo* and subsequent cases applying it a manufacturer of a prescription drug may be shown to be negligent despite the fact that adequate warnings were given to the prescribing physician. Negligence may be shown where, for example, the manufacturer employs "detail" men who instruct physicians on the use of the drug and who are proven to have promoted the product in such a way as to encourage the physicians to ignore the warnings or where the manufacturer knows its warnings are being widely ignored and does nothing about it. *See Incollingo, supra,* 444 Pa. at 292–94, 282 A.2d at 222; *Baldino v. Castagna,* 505 Pa. 239, 247–49, 478 A.2d 807, 812 (1984). Thus, it is clear that there are grounds on which a manufacturer of such a drug may be found liable in negligence despite the adequacy of its written warnings to physicians. In the

clearly entitled to summary judgment on appellants' negligence claim.

Lastly, appellants summarily argue that Parke–Davis did provide a warning directed to patients using Loestrin in the form of a package insert, that this warning was inadequate and that on this ground alone Parke–Davis was negligent. The sum total of appellants' argument on this point is that the warning inadequately described for patients the exact nature of the adverse effects Loestrin might have on the patient's heart and blood vessels, and only told patients that they should notify their doctor of "unusual physical disturbance[s]" while using Loestrin without mentioning any need to see their doctor after use of the drug had ceased. Appellants cite no precedent in support of this argument. Nor have they provided us with a reference to any record evidence, in the form of expert opinion, for example, regarding the inadequacy of the warning. Given this total failure to support this argument on appeal, we would be entirely within our authority if we considered the issue waived and refused to consider it on the merits. *See Ibn–Sadiika v. Riester*, 380 Pa.Super. 397, 551 A.2d 1112 (1988) ("[w]hen an appellant fails to carry forward, or is indecipherably vague in, argumentation upon a certain point in his appellate brief, that point is waived.").

Nevertheless, we do feel compelled to comment that although this argument appears to assert an entirely separate ground for liability, it is in reality predicated upon the basic attack which appellants have made on the application of the learned intermediary doctrine in contraceptive drug cases in general. Since we have rejected that attack, we must of necessity reject appellants' argument based on the package insert provided to patients. The fact that this insert may not have said all that it should have, and we do not decide that question, is irrelevant. As we have already stated, Parke–Davis' duty under Pennsylvania law is to provide an adequate warning to the physician who is to

instant case, we merely find that there is no evidence of any material fact giving rise to such a ground for liability.

prescribe Loestrin and only to that physician. Parke–Davis concededly did so in this case. There is no allegation that Parke–Davis' separate package insert somehow contradicted the warnings to physicians or in some way induced the patient not to follow her physician's advice concerning use of the drug. Absent such an allegation, we cannot see how Parke–Davis can be viewed as negligent for also providing information directly to the patient. The full and admittedly adequate warnings given to the prescribing physician are the only protection the law of negligence in Pennsylvania provides insofar as drug manufacturer warnings to patients using prescription drugs are concerned. Additional warnings given directly to the patient which do not in any way undermine the efficacy of the warnings given to the physician cannot form an independent ground for liability.

The order of the trial court is affirmed.