Sylvia BOUCHARD, Plaintiff,

v.

AMERICAN HOME PRODUCTS
CORP., Defendant.

No. 3:98CV7541.

United States District Court,
N.D. Ohio,
Western Division.

July 30, 2002.

William Patrick Murray, William H. Bartle, Charles M. Nurray, Margaret M. Murray, Charles M. Murray, Murray & Murray, Sandusky, OH, for Plaintiffs.

Jack B. Harrison, Frost and Jacobs, Cincinnati, OH, William H. Baughman, Weston, Hurd, Fallon, Paisley and Howley, Cleveland, OH, Katherine Armstrong, Skadden, Arps, Slate, Meagher & Flom, New York, NY, for Defendant.

## MEMORANDUM OPINION

KATZ, District Judge.

This matter is before the Court on Defendants' motions for partial summary judgment (Doc. Nos. 168 & 202), Defendants' motions in limine to exclude evidence related to Pondimin and primary pulmonary hypertension (Doc. Nos. 166 & 203), Defendants' motion in limine to exclude evidence related to the FDA (Doc. Nos. 167 & 201), Defendants' renewed motions to exclude the expert testimony of Grover Hutchins, M.D. (Doc. Nos. 177 & 178), and Plaintiffs' motion to prohibit *ex parte* contact with certain witnesses (182). This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

### BACKGROUND

Plaintiff Sylvia Bouchard alleges that from December 1996 to July 1997 she consumed the diet drug dexfenfluramine hydrochloride.[1] Also known as Redux, dexfenfluramine hydrochloride was a prescription drug marketed by Defendant American Home Products ("AHP"). AHP's name has since been changed to "Wyeth." Interneuron Pharmaceuticals, which had acquired the right to develop Redux in 1992, is also a Defendant in this action; its name has been changed to Indevus Pharmaceuticals, Inc.[2]

Bouchard filed a complaint in this Court on September 15, 1998. She claimed that her ingestion of Redux had resulted in a number of physical impairments, including cardiac valvular abnormalities, brain damage, and primary pulmonary hypertension. The matter was stayed in this forum and transferred to the Honorable Louis J. Bechtle, Judge of the United States District Court for the Eastern District of Pennsylvania, who was administering multidistrict litigation proceeding No. MDL 1203. In December 1998, Bouchard's aortic and mitral heart valves exhibited significant regurgitation and had to be replaced with mechanical valves. Her case was remanded to this Court on June 22, 2001.

Wyeth has filed motions to exclude the following evidence at trial:

1. Evidence intended to show that Wyeth misled the FDA with respect to labeling information and other disclosures;

2. Evidence related to the drug Pondimin and the condition of primary pulmonary hypertension ("PPH"); and

3. Expert testimony offered by Grover Hutchins, M.D.

Wyeth has also filed a motion for summary judgment. It argues that it is enti-

---

1. Sylvia's husband, Wallace Bouchard, is also a Plaintiff. Unless specifically noted, "Bouchard" and "Plaintiff" refer only to Sylvia Bouchard.

2. Unless otherwise noted, the Defendants will be referred to collectively as "Wyeth."

tled to summary judgment on a number of Bouchard's injury claims because Bouchard is unable to show that she suffers from those injuries or that the use of Redux caused them.

Finally, on June 25, 2002, Bouchard filed a motion requesting an order prohibiting Wyeth from contacting her treating physicians *ex parte*. She claims that such contact is prohibited by the physician-patient privilege codified in O.R.C. § 2317.02.

All of the motions have been fully briefed and are ripe for decision. Further facts and allegations specific to each motion will be developed as necessary.

## DISCUSSION

### I. Bouchard's Motion to Prohibit Ex Parte Contact with Physicians

██ Bouchard claims that she discovered on April 3, 2002, that Wyeth intended to meet with Dr. Ratliff, a pathologist at the Cleveland Clinic. On June 24, 2002, Bouchard's counsel met with Ratliff "to answer any questions he had regarding his testimony." Bouchard's counsel discovered that Ratliff was scheduled to meet with Wyeth's counsel on June 27, 2002, to discuss a deposition scheduled for the next day.[3]

Bouchard claims that the ex parte communications intended by Wyeth violate Ohio's prohibition against contacting treating physicians directly. *See Biddle v. Warren Gen. Hosp.*, 86 Ohio St.3d 395, 409, 715 N.E.2d 518 (Cook, J., concurring); O.R.C. 2317.02. She claims that this prohibition exists even though Wyeth named Ratliff as a witness.

Wyeth has opposed the motion. It argues contact with a treating physician is permitted where the patient has waived the physician-patient privilege by filing a lawsuit. Furthermore, Wyeth points out that Dr. Ratliff has his own attorney, and is fully capable of authorizing his own meetings. Wyeth further claims that Ratliff is its witness and that it therefore should be allowed to discuss matters with him prior to deposition. Finally, Wyeth contends that Ratliff is not really Bouchard's treating physician, since all that he has done is view pathology slides related to her case; furthermore, Wyeth claims that Bouchard has already authorized Ratliff to give Wyeth the information that Ratliff developed from viewing Bouchard's slides.

At least one Ohio appellate court has concluded in an unreported decision that a pathologist who reviews tissues is not a "treating physician" for the purposes of the physician-patient privilege. *See Bowling v. Baden*, 1990 WL 14807 (Ohio App. 12th Dist. Feb. 20, 1990). That appears to be the case here.

The only Ohio precedent that Plaintiff has offered is a concurring opinion in the Ohio Supreme Court, *Biddle v. Warren Gen. Hosp.*, 86 Ohio St.3d 395, 409, 715 N.E.2d 518 (Cook, J., concurring). That is insufficient to prevent a meeting between Wyeth and a physician such as Ratliff. If, as the Plaintiff claims, Ratliff is a treating physician, and a meeting between Wyeth and Ratliff would expose them to tort liability, that is an issue that will likely have to be addressed through a separate suit. Bouchard's motion will be denied.

### II. Wyeth's Motion for Partial Summary Judgment

#### A. Summary Judgment Standard

As an initial matter, the Court sets forth the relative burdens of the parties once a

---

**3.** After Bouchard's motion was filed and opposed, Wyeth cancelled its meeting with Ratliff and cancelled his deposition. Bouchard's motion is not moot because the Defendant still must depose Ratliff.

motion for summary judgment is made. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Of course, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2553. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986) (*quoting* Fed.R.Civ.P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c).

## B. Wyeth's Argument

Wyeth claims that it is entitled to summary judgment on Bouchard's claims that her use of Redux resulted in neurological injury, Primary Pulmonary Hypertension (PPH), an increased risk of developing PPH in the future, elevations of pulmonary pressure, and onset or exacerbation of coronary artery disease. For the reasons below, the motion will be granted.

### 1. Bouchard's Burden of Proof

█ Because Bouchard's action is based on strict liability in tort, she must prove that her "damage or injury was directly and proximately caused by the product defect." *R.H. Macy & Co., Inc. v. Otis Elevator Co.,* 51 Ohio St.3d 108, 554 N.E.2d 1313, 1316 (1990). That is, Bouchard must demonstrate both that Redux was capable of causing the injury she alleges and that Redux did indeed cause her injury. A jury should not be allowed to speculate as to causation, and to eliminate that speculation an expert witness may be necessary. *See Turpin v. Merrell Dow Pharm., Inc.,* 959 F.2d 1349 (6th Cir.1992). Opinions on causation must be expressed in terms of probability, *see Stinson v. England,* 69 Ohio St.3d 451, 633 N.E.2d 532, 537 (1994), and such an opinion must state that the expert's theory of causation is "more probable than not." *See Turpin,* 959 F.2d at 1350.

### 2. Neurological Injury

█ In her complaint, Bouchard requests that Wyeth be required to inform her of all "brain damage" incidents involving Redux. Wyeth argues that Bouchard is unable to show that she suffers from a neurological deficit; even assuming that Bouchard does suffer from brain damage, Wyeth contends that she is unable to put forth evidence to show that the brain damage was caused by her use of Redux.

Wyeth has, therefore, requested that summary judgment be entered in its favor on any claims Bouchard may raise based on brain damage.

In her response to the motion for summary judgment, Bouchard argues that she suffers from memory loss as a result of the medical care that she required because she used Redux. Specifically, she argues that Redux caused valvular heart disease, which, in turn, required open-heart surgery. Bouchard concludes that the open-heart surgery caused her subsequent memory loss.

As evidence of her loss, she points to the testimony of Wallace Bouchard, who testified that Bouchard has been more forgetful since her valve replacement surgery. Bouchard also offers a number of incidents recalled during her deposition that she claims typify the results of her memory loss. Finally, she offers evidence to show that in August 1998 her mental capacity was described as "normal," but by April 2002 she had suffered mild memory loss.

Bouchard has failed to put forth sufficient evidence to satisfy her burden on summary judgment with respect to any alleged cognitive deficit or neurological damage. All that Bouchard has offered is her own and Mr. Bouchard's anecdotal evidence of her memory loss. Even the report of her treating physician after Bouchard's CAT scan offers no support to Bouchard's position, because the physician stated only that Bouchard "appears to have mild memory loss post open heart surgery." Significantly, Bouchard has offered no expert testimony to show that she suffers from any neurological problems or to show that those problems more probably than not resulted from her open-heart surgery. Wyeth's motion will be granted with respect to Bouchard's claim that she has suffered brain damage or memory loss as the result of ingestion of Redux.

### 3. PPH

In her response to Wyeth's motion for summary judgment, Bouchard acknowledges that she does not have PPH and abandons any claim based on present injuries resulting from PPH (Doc. No. 233 at 13). Wyeth's motion for summary judgment will be granted as to Bouchard's claims of present injury resulting from PPH.

### 4. Increased Risk of PPH

■ Wyeth argues that it is entitled to summary judgment on Bouchard's claims that she has been injured because her use of Redux, which injuries have resulted in an increased chance that she will develop PPH. In support of its position, Wyeth contends that there is no evidence that Redux causes an increased risk of PPH for a period longer than one year after a consumer has stopped using the drug. Wyeth further maintains that even if Bouchard's chance of developing PPH had increased as a result of her Redux use, the possibility that she might develop the disease is so insignificantly small that it will not support a cause of action under Ohio law.

Bouchard acknowledges that her risk of developing PPH in the future is small, even if that risk was increased by her use of Redux. Still, Bouchard has offered evidence to show that her risk of PPH has increased by as much as thirty percent over the risk of PPH in the general population, and she claims that this is sufficient to survive summary judgment and allow recovery.

■ Wyeth's argument is well-taken. Ohio law does not permit recovery for the "mere possibility" that a plaintiff may develop a condition, because that would invite speculation by the jury. *See Lavelle v. Owens–Corning Fiberglas Corp.*, 30 Ohio Misc.2d 11, 507 N.E.2d 476, 478–79

(Ohio Com.Pl.1987). Even if recovery were permitted for potential conditions, Bouchard has put forth no evidence to show that she is "more likely than not" to develop PPH. Summary judgment will be granted in favor of Wyeth on Bouchard's claims that she has been injured through an increased chance to develop PPH.

### 5. Elevation of Pulmonary Pressure

■ Bouchard claims that she has suffered episodes of transient elevations of her pulmonary artery pressure as a result of her valvular heart disease, which, in turn, was caused by her use of Redux. Even assuming that she is able to show that she either had or has some elevation of her pulmonary artery pressure, Bouchard has not offered any expert testimony to show that these elevations were more likely than not the product of her valvular heart disease. Although Bouchard has introduced evidence that her cardiologist believed that her elevated pressure was "related" to her valve disease, (McGuinn Dep., 10/8/01, Ex. 4 at 88), that is insufficient to satisfy her burden of production of expert testimony on causation.

### 6. Development and Exacerbation of Coronary Artery Disease

In her response to the motion for summary judgment, Bouchard acknowledges that "a causal relationship between the progression of coronary artery disease and the use of Redux cannot currently be established." (Doc. No. 233 at 17). Accordingly, Wyeth's motion for summary judgment on Bouchard's claims related to the development and exacerbation of coronary artery disease will be granted.

### III. *Wyeth's Motion to Exclude Expert Testimony*

■ Wyeth has filed a motion to exclude the testimony of Bouchard's expert Grover Hutchins, M.D., pursuant to Federal Rules of Evidence 702 and 703 and *Daubert v.* *Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The legal standard to be used in *Daubert* challenges was set forth by Judge Bechtle in his memorandum opinion issued on February 1, 2001:

Federal Rule of Evidence 702 obligates judges to ensure that any scientific testimony or evidence admitted is relevant and reliable. *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 147, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) (quoting *Daubert,* 509 U.S. at 589, 113 S.Ct. 2786). The party offering the expert has the burden of proving admissibility. *Daubert,* 509 U.S. at 592 n. 10, 113 S.Ct. 2786. The subject of an expert's testimony must be grounded in the methods and procedures of science and based on more than subjective belief or speculation. *Id.* at 589–590, 113 S.Ct. 2786. Further, Rule 702 requires that expert testimony assist the trier of fact, i.e., it must "fit" the issues in the case by having a "valid scientific connection to the pertinent inquiry." *Id.* at 591–92, 113 S.Ct. 2786.

In determining "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact," the court must assess whether the methodology underlying the testimony is scientifically valid and whether it can properly be applied to the facts in issue. *Id.* at 592–93, 113 S.Ct. 2786. Furthermore, the court must examine the expert's conclusions in order to determine whether they can reliably follow from the facts known to the expert and the methodology used. *Heller v. Shaw Indus., Inc.,* 167 F.3d 146, 153 (3d Cir. 1999).

In *Daubert,* the Court identified several factors to assist courts in evaluating whether a scientific theory or methodology constitutes reliable scientific knowl-

edge. These include: whether the theory or technique can be or has been tested; whether the theory has been subjected to peer review and publication; whether a technique has a known or potential rate of error and whether there are standards controlling the technique's operation; and whether the theory or method has general acceptance in the scientific community. *Daubert,* 509 U.S. at 593–94, 113 S.Ct. 2786. These factors "are simply useful signposts, not dispositive hurdles that a party must overcome in order to have expert testimony admitted." *Heller,* 167 F.3d at 152.

In addition, a court should "exclude proffered expert testimony if the subject of the testimony lies outside the witness's area of expertise." 4 Weinstein's Fed. Evid. § 702.06[1], at 702–52 (2000). In other words, a party cannot qualify as an expert generally by showing that the expert has specialized knowledge or training which would qualify him or her to opine on some other issue. *Redman v. John D. Brush & Co.,* 111 F.3d 1174, 1179 (4th Cir.1997); *Barrett v. Atl. Richfield Co.,* 95 F.3d 375, 382b (5th Cir. 1996).

Moreover, testimony of an expert that constitutes mere personal belief as to the weight of the evidence invades the province of the jury. *McGowan v. Cooper Indus., Inc.,* 863 F.2d 1266, 1273 (6th Cir.1988); *STX, Inc. v. Brine, Inc.,* 37 F.Supp.2d 740, 768 (D.Md.1999) (quotation omitted), *aff'd,* No. 99–1540, 2000 WL 564010 (Fed.Cir. May 8, 2000); *Sec. & Exch. Comm'n v. Lipson,* 46 F.Supp.2d 758, 763 (N.D.Ill.1998).

Lastly, the court "should also be mindful of other applicable rules." *Daubert,* 509 U.S. at 595, 113 S.Ct. 2786. Federal Rule of Evidence 703 "provides that expert opinions based on otherwise inadmissible hearsay are to be admitted only if the facts and data are 'of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject.' " *Id.* (quoting Fed.R.Evid. 703). Under Rule 703, "[i]f the underlying data are so lacking in probative force and reliability that no reasonable expert could base an opinion on them, an opinion which rests entirely upon them must be excluded." *In re Paoli RR. Yard PCB Litig.,* 35 F.3d [717,] 748 (quoting *In re "Agent Orange" Prod. Liab. Litig.,* 611 F.Supp. 1223, 1245 (E.D.N.Y.1985)).

*In re: "Diet Drugs" (Phentermine, Fenfluramine, Dexfenfluramine) Prod. Liab. Litig.,* No. MDL 1203, 2001 WL 454586, at *5–6 (E.D.Pa. Feb.1, 2001) (footnotes omitted). The district court is not required to hold a hearing to address a *Daubert* issue. *See Greenwell v. Boatwright,* 184 F.3d 492, 498 (6th Cir.1999).

■ Wyeth has not requested that all of Hutchins's testimony be excluded. Rather, it requests that his testimony be limited to exclude opinions related to an article that Hutchins co-authored with Keith Volmar, *Aortic and Mitral "Fen–Phen Valvulopathy" in 64 Patients Treated with Anorectic Agents,* 125 Arch. Pathol. Lab. Med. 1555 (2001) (Doc. No. 57, Exh. 9). Wyeth argues that the criteria for diagnosis of anorexigen-related valvulopathy as expressed in that article unjustifiably broaden those set forth in the seminal article on valvulopathy, Heidi M. Connolly's *Valvular Heart Disease Associated with Fenfluramine–Phentermine,* 337 NEJM 581 (Aug. 28, 1997). It also argues that opinions based on that article should be excluded because the article was not based on a reliable study, that the samples used by Hutchins were tainted by selection bias, and that the writing of the article was driven by litigation. Wyeth claims that Hutchins has "abandoned the previously

disclosed basis for his opinions in this case." (Doc. No. 27).

Bouchard argues that Wyeth's motion is without merit because rather than state a new basis for his opinion, Hutchins's article merely restates and supports his old opinion. Bouchard lists a number of epidemiological factors that she believes validate Hutchins's study. Furthermore, Bouchard notes that through publication the article has undergone peer review.

Having reviewed both Hutchins's article and his deposition testimony, the Court is convinced that his article may not form the basis of his opinion in this case. Although not inconsistent with his prior testimony, Hutchins' article is overly tainted with selection bias due to his failure to blind his examination. That having been said, there is no reason that Hutchins may not refer to the information in his article to the extent that it buttresses the opinions to which he has previously testified. The Court is aware of no prohibition against an expert developing and fortifying a conclusion that he has previously expressed. Wyeth's motion to limit the testimony of Hutchins will be granted, but only to the extent that Hutchins intends to testify that his opinions are based on his 2001 article.

## IV. Wyeth's Motions in Limine

### A. Motions in Limine and Admissible Evidence

Motions in limine are generally used to ensure evenhanded and expeditious management of trials by eliminating evidence that is clearly inadmissible for any purpose. *see Jonasson v. Lutheran Child and Family Serv.*, 115 F.3d 436, 440 (7th Cir.1997). The court has the power to exclude evidence in limine only when evidence is clearly inadmissible on all potential grounds. *Cf. Luce v. United States,* 469 U.S. 38, 41 n. 4, 105 S.Ct. 460, 463 n. 4, 83 L.Ed.2d 443 (1984) (federal district courts have authority to make in limine

rulings pursuant to their authority to manage trials). Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context. (citations omitted). Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted at trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded. The court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion in limine. *See United States v. Connelly,* 874 F.2d 412, 416 (7th Cir.1989) (citing *Luce,* 469 U.S. at 41, 105 S.Ct. at 463) ("Indeed, even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling."); *Hawthorne Partners v. AT & T Technologies, Inc.,* 831 F.Supp. 1398, 1400–1401 (N.D.Ill.1993).

Evidence is relevant when it has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. Generally, "[a]ll relevant evidence is admissible," Fed.R.Evid. 402, unless "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403.

### B. Pondimin and PPH

Wyeth has moved to exclude any evidence involving the labeling of the drug Pondimin. Wyeth anticipates that Bouchard, if allowed, will attempt to introduce

evidence intended to show that Wyeth allowed Pondimin to be marketed with a label that was misleading because it did not reflect the actual number of deaths that Wyeth knew had resulted from Pondimin-induced Primary Pulmonary Hypertension ("PPH"). Wyeth argues that this evidence would be irrelevant because, as Wyeth has stated repeatedly in its briefs, Bouchard did not take Pondimin, and she is unable to show that she has ever suffered from PPH. Wyeth also contends, repeatedly and at unusually great length, that introduction of Pondimin-related evidence would greatly extend the length of trial and the potential for confusion of the issues.

Bouchard disagrees. She argues that the decisions made by Wyeth with respect to disclosure of information for the Pondimin label "relates to a conceptual understanding of the marketing decisions made by defendants regarding Redux and the underlying plan and method of operation within the defense companies." (Doc. No. 187, at 3). She also argues that the active ingredient in Pondimin, dexfenfluramine, is the active (and only) ingredient in Redux; because the two are chemically similar, she argues, evidence of the deleterious effects of one is probative of the possible effects of the other.

Bouchard's argument is not well-taken. Because Bouchard did not take Pondimin, both the probative value and relevance of evidence related to Pondimin's labeling are questionable, at best. Furthermore, although Pondimin and Redux are chemically similar, they are not the same, and the difference is both subtle and complex. Introduction of any testimony regarding Pondimin and its label would necessitate detailed explanation and comparison of the

two drugs, and even then the potential for confusion and unfair prejudice would be inordinately high. Moreover, this Court has already determined that Bouchard is unable to maintain claims related to PPH or the development of PPH. Any probative value that the information might have, whether it be to show plan, motive, or general method of operation, is far outweighed by the danger of confusion of the issues and the danger of unfair prejudice.

Wyeth's motion to exclude evidence related to Pondimin's label will be granted. At trial, Bouchard will not be permitted to introduce evidence about Pondimin's label, including, but not limited to, whether any PPH-related deaths related to Pondimin use but not disclosed to the FDA should have been included on Pondimin's label.

## C. FDA Information

■ Wyeth has filed a motion to exclude "any evidence or argument that Wyeth 'misled' the United States Food and Drug Administration ("FDA") or 'violated' the Food, Drug, and Cosmetic Act ('FDCA'), 21 U.S.C. §§ 301, et seq." (Doc. No. 167 at 1). Wyeth argues that introduction of such evidence is barred by the Supreme Court's decision in Buckman Co. v. Plaintiffs' Legal Committee, 531 U.S. 341, 121 S.Ct. 1012, 148 L.Ed.2d 854 (2001). It is important to note, however, that Wyeth has acknowledged that it has not requested that any causes of action asserted by Bouchard be preempted; rather, it is only attempting to exclude evidence that might allow the jury to find that Wyeth is liable on some other cause of action based on evidence that Bouchard may argue shows that Wyeth misled the FDA or failed to follow FDA regulations.[4]

---

4. Despite this acknowledgment, much of Wyeth's reply brief seems dedicated to demonstrating that Bouchard's state-law claims are preempted by Buckman. Not only is it rather late in the day in this litigation for such arguments, but also a motion in limine is hardly the proper vehicle for their consideration.

In *Buckman,* the plaintiffs alleged that they had been injured by the implantation of FDA-approved bone screws. They argued that "but for" fraudulent representations made by the defendants to the FDA, the screws would not have been approved by the FDA, and the plaintiffs would not have been injured. *See Buckman,* 531 U.S. at 343, 121 S.Ct. at 1015. The Court held that such "fraud on the FDA" claims were preempted by the FDCA, as amended by the Medical Device Amendments of 1976(MDA), 90 Stat. 539, 21 U.S.C. § 301 (1994 ed. and Supp. V). The Court reasoned that policing fraud on a federal agency was not a traditional State role, and noted that the FDA's authority to punish fraud against the Administration was used "to achieve a somewhat delicate balance of statutory objectives." *Id.* at 348, 121 S.Ct. at 1017.

Bouchard argues that *Buckman* is not applicable to the present case for two reasons. First, she claims that none of the causes of action stated in her complaint include fraud on the FDA as an essential element. Second, she maintains that *Buckman* stands only for the proposition that claims of fraud on the FDA arising from medical devices are preempted, not claims arising from the use of pharmaceuticals.

The Court does not need to engage in searching analysis of *Buckman* to determine that claims of fraud on the FDA are preempted with respect to pharmaceuticals. In *Kemp v. Medtronic, Inc.,* 231 F.3d 216, the Sixth Circuit held, "[P]ermitting a fraud claim premised on false representations to the FDA ... would conflict with well-established precedent that no implied private right of action exists under the FDCA." *Id.* at 236 (citing *Bailey v. Johnson,* 48 F.3d 965 (6th Cir.1995)). Furthermore, allowing such an action "would effectively set aside the entire FDA approval process. Not only would

litigants be able to explore and challenge the administrative decision-making process of the federal agency, but also conflicts could easily arise between the results of state-law fraud litigation and federal enforcement...." *Kemp* at 238 (Moore, J., concurring). The holding and reasoning of *Kemp* are unaffected by *Buckman.*

Wyeth's motion will be granted. Having determined that private actions premised on fraud on the FDA are not permitted, the Court must decide to what extent, if any, evidence offered by Bouchard should be excluded. If, as Bouchard has stated, her claims are based on direct fraud against her and her healthcare provider, rather than the FDA, then her claims are not preempted, and evidence concerning what information was an was not provided to the FDA might still be relevant. *See Globetti v. Sandoz Pharm. Corp.,* No. CV98–TMP–2649–S, 2001 WL 419160 (N.D.Ala. Mar.5, 2001) (Putnam, Chief Mag. J.); *Eve v. Sandoz Pharm. Corp.,* No. IP 98–1429–C–Y/S, 2002 WL 181972 (S.D.Ind. Jan.28, 2002). Evidence will be excluded outright when it is offered only to show that the FDA was misled, or that information was intentionally concealed from the FDA. Exclusion of further evidence may be necessary to prevent confusion of the jury as to the nature of Bouchard's claims; to the extent that is the case, further objections may be made at trial.

## CONCLUSION

For the foregoing reasons, Defendants' motions for partial summary judgment (Doc. Nos. 168 & 202) will be granted. Defendants' motions in limine to exclude evidence related to Pondimin and primary pulmonary hypertension (Doc. Nos. 166 & 203) will be granted. Defendants' motion in limine to exclude evidence related to the FDA (Doc. Nos. 167 & 201) will be grant-

ed. Defendants' renewed motions to exclude the expert testimony of Grover Hutchins, M.D. (Doc. Nos. 177 & 178) will be denied. Plaintiffs' motion to prohibit *ex parte* contact with certain witnesses (182) will be denied.

IT IS SO ORDERED.